THE STATE OF OHIO, APPELLEE, *v.*
MILLER, APPELLANT.

(No. C-870349—Decided
October 19, 1988.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *Judith A. Mullen* and *Melba Marsh,* for appellee.

*Robert H. Gutzweiler,* for appellant.

*Per Curiam.* On March 15, 1985, defendant-appellant, George Miller, committed a robbery at the Movies Repertory Cinema in downtown Cincinnati. As the offense took place a theatre employee alerted the police by telephone and gave them a description of the robber.

Two officers responding to the call learned from a radio broadcast that the suspect had been seen entering a nearby hotel; and when they asked the desk clerk if she had seen anyone fitting the suspect's description enter the hotel lobby, she responded that she had not seen anyone, but that the description fit the person who was staying in Room 403. The officers proceeded to the fourth floor, where they found the door to Room 403 slightly ajar. One of the officers then knocked on the door, and as it opened, he saw Miller, who matched the description of the robbery suspect.

Miller was arrested and taken to a police cruiser outside the hotel, where two theatre employees identified him as the robber. A third identification was later provided by another theatre employee.

In an effort to uncover physical evidence linking Miller to the theatre robbery, police checked the trash receptacles on the third and fourth floors of the hotel. On the third floor, an officer found a blue bag, a pair of sunglasses and a sweater, all of which were identified as items used by Miller when he robbed the theatre.

Following his arrest, Miller was indicted for four other robberies (a department store on February 27, 1985; a bank on March 1, 1985; a clothing store on March 8, 1985; and a restaurant on March 9, 1985) that were under investigation by three different police departments in Hamilton County. In each case, at least one eyewitness provided a positive identification of Miller as a result of a lineup held on March 28, 1985.

All five robberies shared certain attributes, including the following: (1) in each, the victim was a woman; (2) in each, Miller placed his hand in a bag he carried over his shoulder and gestured as though he were holding a gun; and (3) in each, Miller told the victim that if she failed to act quickly he would begin shooting.

The charges (one count of robbery and one count of aggravated robbery for each of the five incidents) were tried jointly before a jury. On each count of aggravated robbery, Miller was found guilty of the lesser included offense of theft. In addition, he was found guilty as he stood charged in four of the five counts of robbery, and on the fifth robbery count (the theatre incident), there was another guilty verdict for the lesser included offense of theft. The sentence imposed by the court included four consecutive terms of incarceration (each running from five to fifteen years) to be served concurrently with a one-hundred-eighty-day period of confinement in the Hamilton County Justice Center. Miller filed this appeal.

In his first assignment of error, Miller alleges that the trial court erred in refusing to discharge him for want of a speedy trial. We disagree.

Miller was arrested on March 15, 1985, and his trial began on February 10, 1987, nearly seven hundred days later. Pursuant to R.C. 2945.71(C)(2) and (E), felony charges must be tried within two hundred seventy days of the defendant's arrest, and under certain conditions of incarceration, that time is reduced to ninety days, unless there are certain intervening circumstances that delay the trial. In this case, even if we assume *arguendo* that the state had the burden of bringing Miller to trial within ninety days of his arrest, we find that he was not denied a speedy trial by the state. In the time between his arrest and the trial, Miller filed over twenty motions either requesting a continuance or requiring some action by the court before the case could go to trial. By our calculations, a maximum of eighty-eight days between Miller's arrest and the trial may be charged against the state. See *State* v. *Furtwengler* (June 24, 1987), Hamilton App. No. C-860631, unreported. Miller's own conduct caused his trial to be delayed for over six hundred days; consequently, he may not now assert that the state was responsible for his failure to receive a speedy trial. Miller's first assignment of error is overruled.

In his second assignment of error, Miller contends that the trial court erred in overruling his motion to suppress evidence. In his argument on this assignment, Miller seems to indicate that there were multiple motions to suppress that were denied by the trial court. Miller has failed to comply with Loc. R. 6(C)(3)(a), in that the statement of the assignment of error is not complete without citations to those portions of the record reflecting the alleged errors. See, also, App. R. 12(A). In a record that contains over 3,500 pages of transcribed testimony and four hundred docket entries, the appellant must tell the appellate court specifically where the trial court's alleged errors may be located.

However, in the interest of justice, we have conducted our own review of the record, and we have been able to

identify one of the four motions to which Miller refers in his brief. We will address that motion. The other three issues that Miller argues were apparently not presented as part of specific motions in the trial court.[1]

On January 13, 1986, Miller filed a *pro se* motion to suppress the in-court identification of him by the state's witnesses because of suggestive identification procedures employed by the police following his arrest for the theatre robbery.

The reliability of a "one-on-one showup" has been addressed by the United States and Ohio Supreme Courts. *Neil* v. *Biggers* (1976), 409 U.S. 188; *State* v. *Madison* (1980), 64 Ohio St. 2d 322, 18 O.O. 3d 491, 415 N.E. 2d 272. The crucial issue identified by both courts is whether, under the totality of the circumstances, there is a very substantial likelihood of misidentification. We find that the evidence concerning the area in which the theatre robbery occurred, its size and illumination, the time that Miller was in the theatre lobby, and the distance between Miller and the witnesses at the time of the robbery, combined with the short time between the robbery and the identification, demonstrate no substantial likelihood that the police procedure resulted in a misidentification. Therefore, the trial court did not err when it overruled Miller's motion to suppress the in-court identification of him by the witnesses to the theatre robbery.

Miller's second assignment of error is overruled.

In his third assignment of error, Miller contends that the trial court erred in allowing "conclusory hearsay" statements into evidence.

The record reveals that the trial court permitted the state to question one officer who investigated the case regarding similarities between the robberies that Miller was accused of committing. The testimony came in over Miller's objection. The record also reveals that on cross-examination Miller's counsel questioned the officer concerning the similarities between the statements of the various witnesses and victims. We find that cross-examination on the matters now challenged by Miller constituted a waiver of any objection to the initial introduction of the testimony. *State* v. *Snell* (June 19, 1985), Hamilton App. No. C-840743, unreported. This court has held that:

"[An] [a]ppellant in this situation must make a choice between two exclusive alternatives. He can object to the testimony and stand on that objection or he can attempt to present evidence to rebut the alleged irrelevant testimony. The choice of this second alternative, however, waives any error of an evidentiary nature in admitting such arguably irrelevant testimony." *State* v. *Wales* (Jan. 5, 1977), Hamilton App. No. C-75674, unreported.[2]

Miller's third assignment of error is overruled.

---

[1] We have located, in the transcript of the docket, five motions to suppress that were filed either by Miller or by his trial counsel. However, the motions do not correspond with Miller's argument on appeal. This problem is not corrected by the motion filed by Miller's counsel on May 20, 1986, asking the court to suppress all the evidence in the case, captioned "Motion to Suppress" and consisting of a two-line memorandum: "U.S. Constitution — Amendment IV, U.S. Constitution — Amendment XIV."

[2] This court has also articulated this position in *State* v. *Williams* (Aug. 27, 1988), Hamilton App. No. C-870384, unreported; and *State* v. *Gorman* (Oct. 23, 1985), Hamilton App. No. C-840707, unreported.

In his fourth assignment of error, Miller asserts that the trial court erred in sustaining objections to his attempts to cross-examine prosecution witnesses.

Miller does not specify what questions the court improperly prevented the witnesses from answering. Instead, he directs us to sections of the transcript pertaining to general topics that he was attempting to cover in his cross-examination. We have reviewed the general areas cited by Miller, and we do not find that the trial court abused its discretion when it sustained the state's objections to the questions propounded by Miller's counsel. See *State* v. *Graham* (1979), 58 Ohio St. 2d 350, 352, 12 O.O. 3d 317, 318, 390 N.E. 2d 805, 807.

Without a more detailed assignment of error, we cannot make a more detailed analysis. Miller's fourth assignment of error is overruled.

Miller asserts in his fifth assignment of error that the trial court should have granted his motion to dismiss because of prosecutorial misconduct.

We find that this assignment is also flawed by a lack of specificity, including Miller's failure to cite the court to that place in the transcript in which he made his motion to dismiss.[3] There are six acts of alleged prosecutorial misconduct to which Miller takes exception. We will assume that because Miller cites to six instances recorded in the transcript in which he or his counsel requested a mistrial, he is objecting to the trial court's denial of each individual motion and not to the denial of a single motion in which he argued six supporting incidents.

We have reviewed each of the six incidents of alleged prosecutorial misconduct, and we do not find that the trial court abused its discretion in failing to grant a mistrial in any of the six instances. None of the six incidents resulted in a high degree of necessity for ordering a mistrial, none left the judge without a reasonable alternative to declaring a mistrial, and none jeopardized the public interest in a fair trial designed to end in a just judgment. *State* v. *Widner* (1981), 68 Ohio St. 2d 188, 190, 22 O.O. 3d 430, 431, 429 N.E. 2d 1065, 1067.

Miller's fifth assignment of error is overruled.

In his sixth assignment of error, Miller contends that the trial court erred in allowing into evidence a seating card from the restaurant that he was accused of robbing.

Miller contends that because the card contained his name, it was hearsay, and that it did not fall under any of the recognized hearsay exceptions. We do not agree with Miller's characterization of the card. A witness who was employed by the restaurant on the night that it was robbed testified that she read the name on the card to a group of people who were waiting to be seated, and that Miller responded. The card was not used by the state to prove the truth of any matter asserted by the card, *i.e.,* whether George was in fact Miller's name. Instead, it was a piece of physical evidence that was relevant and admissible. The trial court did not abuse its discretion in allowing the card into evidence.

Miller's sixth assignment of error is overruled.

In his seventh assignment of error, Miller alleges that the trial court erred in failing to require the prosecution to disclose evidence that was favorable to him.

---

[3] In fact, we question whether a motion to dismiss is a proper motion under the Criminal Rules. It would appear that Miller should have designated the motion as a motion for mistrial.

Miller contends that the written statements of three witnesses, when taken as a group, were favorable to Miller because of alleged discrepancies among the statements. We have reviewed the testimony of the witnesses and we find that the trial court's conduct in regard to the written statements made by the state's witnesses was in compliance with Crim. R. 16(B)(1)(g). Miller was permitted to review each witness's statement after the witness testified in the state's case-in-chief and before Miller began his cross-examination. We do not accept Miller's argument that the three statements, when viewed as a group, were favorable to him because of variances in the witnesses' descriptions of the offense in question, and that, therefore, pursuant to Crim. R. 16(B)(1)(f), the state had a duty to reveal the statements to Miller before the trial.

Miller's seventh assignment of error is without merit and is overruled.

In his eighth assignment of error, Miller contends that the trial court erred in overruling his objections to the admission into evidence of the videotaped testimony of one of the witnesses. Miller raises four issues in support of this assignment of error, none of which has merit.

Miller argues that the deposition was not filed with the trial court under the correct case number and, therefore, was not properly admitted at trial. We have reviewed the record, and we find that the deposition was filed under the number of the case that was dismissed after Miller was re-indicted for the four additional robberies. In this case, the "misfiling" did not result in prejudice to any party. All concerned were aware of the existence of the deposition before trial if it was needed for review. In addition, the entire deposition was presented at trial and transcribed into the record. Therefore, the trial court was not confronted with a situation in which one party quoted isolated passages from the deposition, but, by failing to file a copy of the deposition, prevented the court or opposing counsel from having the passages placed in their proper context.

Miller alleges that the deposition was not properly authenticated. This allegation is simply not true. The deposition was certified by the court reporter. Miller also objected to the court's acceptance of the prosecutor's assurance that the witness was out of the jurisdiction. The rule does not state how the party seeking to use the deposition must show that the witness is out of the state. We find that the verification of a witness's unavailability should be left to the sound discretion of the trial court.

Finally, Miller asserts that his counsel was not performing effectively at the time of the deposition. However, he does not direct this court to any specific instances demonstrating his counsel's ineffectiveness. We have reviewed the deposition and applied the two-part test of *State* v. *Lytle* (1976), 48 Ohio St. 2d 391, 2 O.O. 3d 495, 358 N.E. 2d 623. We do not find any conduct by Miller's attorney that demonstrates a violation of defense counsel's duty to his client. Therefore, we do not consider the second step of the test, which requires the court to determine if the defendant was prejudiced by his attorney's actions.

Miller's eighth assignment of error is overruled.

In his ninth assignment of error, Miller contends that the trial court erred in allowing certain exhibits into evidence. We have reviewed the challenged exhibits, and we find that the trial court did not abuse its discretion in allowing them into evidence.[4] See

_____

[4] Miller objected to state's Exhibits 5, 20, 21, 22 and 28.

*State* v. *Sage* (1987), 31 Ohio St. 3d 173, 31 OBR 375, 510 N.E. 2d 343.

Miller's ninth assignment of error is overruled.

Miller asserts in his tenth assignment of error that the trial court erred in sentencing him to four consecutive terms of five to fifteen years. The assignment is without merit. The trial court is authorized to impose consecutive sentences under R.C. 2929.41 (B). Miller's allegations that the trial court imposed the sentences to penalize him for requesting a jury trial, and that the trial court failed to consider the guidelines of R.C. 2929.12, are completely unsupported by the record. See *State* v. *Brown* (1984), 12 Ohio St. 3d 147, 12 OBR 186, 465 N.E. 2d 889.

Miller's tenth assignment of error is overruled.

In his eleventh assignment of error, Miller argues that the trial court erred in sustaining the state's objections to expert testimony concerning the suggestive nature of the lineup and showup.

In *State* v. *Powell* (1986), 22 Ohio St. 3d 124, 22 OBR 203, 489 N.E. 2d 795, the Supreme Court held that expert testimony concerning the variables or factors that may impair the accuracy of a typical eyewitness identification is admissible under Evid. R. 702, while testimony regarding the credibility of the identification testimony of a particular witness is not admissible under Evid. R. 702, absent a showing that the witness suffers from some impairment that would affect the witness's ability to observe or recall events. In the instant case, Miller was allowed to present expert testimony concerning the variables and factors affecting eyewitness identification. However, the court sustained the state's objections to questions concerning specific identifications made by witnesses in this case. While an expert witness may provide helpful informa-

tion in a case where identification testimony plays a vital role, the ultimate question of the credibility of each witness's testimony is within the province of the trier of fact. The court was correct in not allowing Miller to question the expert concerning specific identification procedures employed in this case.

Miller's eleventh assignment of error is overruled.

Miller contends in his twelfth assignment of error that the trial court erred in denying his motion for acquittal. We disagree.

We have conducted an independent review of the record in this case, and we find that reasonable minds can reach different conclusions on the question of whether each element of the offenses has been proved beyond a reasonable doubt. See *State* v. *Thomas* (1982), 70 Ohio St. 2d 79, 24 O.O. 3d 150, 434 N.E. 2d 1356. Therefore, the trial court did not err in refusing to grant Miller's motion for acquittal.

In his thirteenth assignment of error, Miller contends that the trial court erred in removing a prospective juror from the panel upon the state's challenge for cause.

The transcript of the jury selection hearings reveals that the venireman in question stated that he could not be fair and impartial to the state, and that under no circumstances could he believe a certain police officer who was to be one of the state's key witnesses. Where a venireman expresses doubts about his ability to serve as a fair and impartial juror, it is not error to excuse that juror for cause. See *State* v. *Toth* (1977), 52 Ohio St. 2d 206, 6 O.O. 3d 461, 371 N.E. 2d 831.

Miller's thirteenth assignment of error is overruled.

In his fourteenth assignment of error, Miller asserts that the trial court erred in refusing to disclose the minutes of the grand jury that indicted him. He urges this court to "re-

examine" the "particularized need" test set forth by the Supreme Court in *State* v. *Greer* (1981), 66 Ohio St. 2d 139, 20 O.O. 3d 157, 420 N.E. 2d 982. We will not "re-examine" Supreme Court precedent on this or any other question of law. Miller's failure to show a particularized need for the grand jury minutes is fatal to his request and to this assignment of error.

Miller's fourteenth assignment of error is overruled.

Finding all of Miller's assignments of error to be without merit, we affirm the judgment of the court below.

*Judgment affirmed.*

BLACK, P.J., DOAN and KLUS-MEIER, JJ., concur.