[Cite as *State v. Price*, 2024-Ohio-3016.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                                  :

    Plaintiff-Appellee,                     :

                                Nos. 113463 and 113464

    v.                                      :

D'VAUN PRICE,                                   :

    Defendant-Appellant.                    :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
**RELEASED AND JOURNALIZED:**  August 8, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-23-679324-A and CR-21-660472-A

---

## *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher Woodworth, Assistant Prosecuting Attorney, *for appellee.*

P. Andrew Baker, *for appellant.*

MICHAEL JOHN RYAN, J.:

{¶ 1} Defendant-appellant D'Vaun Price appeals his conviction on two cases: Case Nos. CR-21-660472-A and CR-23-679324-A. Finding some merit to the appeal, we affirm in part and reverse in part.

**CR-21-660472-A**

{¶ 2} In 2021, Price and his codefendant, Amia Shelton, were indicted on one count each for aggravated robbery, felonious assault, and robbery. Robert Garrity was the named victim on the aggravated robbery and felonious assault counts. Marcia Sachs, Garrity's wife, was the named victim on the robbery count. The matter proceeded to a bench trial; the codefendants were tried together. The following facts were established at trial.

{¶ 3} Garrity testified that he owned several rental units in the Asiatown neighborhood of Cleveland. Shelton was a former tenant; there was animosity between Garrity and Shelton because Shelton's rent payments were often late and when Garrity noticed that someone else moved into the apartment, which Shelton denied, he tried to raise the rent. Eventually, Garrity informed Shelton that he was not renewing her lease. Garrity did not return Shelton's security deposit. In a letter explaining the decision, Garrity noted to Shelton that she had stolen the lock off a door, had kicked a door in, and left the apartment in a horrible condition, which required 21 hours of cleaning.

{¶ 4} On the day in question, Shelton confronted Garrity, demanding the return of her security deposit. According to Garrity, Shelton knocked on his door

wearing a hoodie and a face mask, which was uncharacteristic for her even though many people still wore face masks due to the COVID-19 epidemic. After briefly discussing the rent deposit, Garrity shut the door, but Shelton would not leave and continued to knock on Garrity's door. Garrity began to film the encounter on his cell phone and told Shelton that she was trespassing.

{¶ 5} At this time, Garrity's wife, Marcia Sachs, pulled up in her car and Shelton went to speak to her. Garrity left his apartment and saw Price, who was also wearing a hoodie and a face mask; he also wore rubber gloves. Garrity again started filming the scene and informed Price that he was trespassing. The cell phone video, as well as video from Garrity's Ring doorbell camera, was played for the court and entered into evidence.

{¶ 6} As Garrity was filming the scene, Price pulled his mask down and spit in Garrity's face. He then grabbed Garrity's phone and proceeded to assault Garrity. At some point, Sachs got possession of her husband's phone. Shelton then grabbed the phone from Sachs and pushed her to the ground. Garrity suffered cuts to his face, a broken cheekbone, and injuries to his shoulders that required surgery. Price and Shelton fled with Garrity's cell phone.

{¶ 7} Sachs testified to substantially the same facts as Garrity.

{¶ 8} Shelton testified that Garrity was a nosy landlord who often entered her apartment without notice. She testified that she left the apartment "pretty much clean," but admitted that she left personal possessions that she no longer wanted in the apartment when she moved out. Shelton testified that Garrity attacked her after

she grabbed his phone. According to Shelton, she tried to swat Garrity's cell phone out of his hand but had no intention of stealing his phone. Shelton admitted that Sachs fell to the ground when she took Garrity's phone from her. Shelton testified that she did not realize she still had Garrity's phone until after they fled and were driving on the highway. Not wanting the phone, Shelton tossed it out of the car window, where it was later recovered by police.

{¶ 9} The trial court found Price guilty of aggravated robbery and felonious assault as to victim Garrity but not guilty of robbery as to victim Sachs. The court subsequently sentenced Price to an indefinite sentence of three years up to four years and six months on each count, to run concurrently, but consecutive to CR-23-679324-A. The court acquitted Shelton of aggravated robbery and felonious assault as to victim Garrity but convicted her of robbery as to victim Sachs.

**CR-23-679324-A**

{¶ 10} In Case No. CR-23-679324-A, Price was indicted on one count each of aggravated vehicular assault, failure to stop after accident, and criminal damaging.

{¶ 11} On October 6, 2023, Price entered a plea of guilty to the first two counts: aggravated vehicular assault and failure to stop after accident. The court dismissed the criminal damaging charge. The matter was referred to the probation department for a presentence-investigation report. On November 22, 2023, the trial court sentenced Price to an indefinite sentence of 12 months up to two years in prison on each count, to run concurrently, but consecutive to his sentence in CR-21-660472-A.

{¶ 12} Price filed a notice of appeal and raises two assignments of error for our review:

> I. The conviction as to Case CR-23-679324 must be vacated as defendant-appellant was not informed of his constitutional right against self-incrimination at the plea colloquy.
>
> II. Appellant-defendant's verdict of guilty of aggravated robbery was inconsistent with the acquittal of the codefendant on the same count.

{¶ 13} In the first assignment of error, Price argues that the trial court erred in failing to inform him of his right against self-incrimination during his plea colloquy in CR-23-679324. The State concedes the error.

{¶ 14} In *State v. Dangler*, 2020-Ohio-2765, the Ohio Supreme Court clarified the review standard on appeal regarding compliance with Crim.R. 11. The *Dangler* Court stated, "When a criminal defendant seeks to have his [or her] conviction reversed on appeal, the traditional rule is that he [or she] must establish that an error occurred in the trial court proceedings and that he [or she] was prejudiced by that error." *Id.* at ¶ 13, citing *State v. Perry*, 2004-Ohio-297; *State v. Stewart*, 51 Ohio St.2d 86 (1977); Crim.R. 52.

{¶ 15} The *Dangler* Court set forth two limited exceptions to the traditional rule in the criminal-plea context. *Dangler* at ¶ 14 - 15. Under these two exceptions, no showing of prejudice is required when (1) a trial court fails to explain the constitutional rights set forth in Crim.R. 11(C)(2)(c) that a defendant waives by pleading guilty or no contest, or (2) a trial court has completely failed to comply with

a portion of Crim.R. 11(C). *Id.* at ¶ 14-15, citing *State v. Clark*, 2008-Ohio-3748; *State v. Veney*, 2008-Ohio-5200.

{¶ 16} Because prior case law has "muddled [the] analysis by suggesting different tiers of compliance with the rule" the inquiry no longer focuses on strict, substantial, or partial compliance with the rule. *Dangler* at ¶ 17. Rather, the questions to be answered are as follows: "(1) has the trial court complied with the relevant provision of the rule? (2) if the court has not complied fully with the rule, is the purported failure of a type that excuses a defendant from the burden of demonstrating prejudice? and (3) if a showing of prejudice is required, has the defendant met that burden?" *Id.*

{¶ 17} Here, the trial court inadvertently omitted an advisement regarding Price's privilege against compulsory self-incrimination during the plea colloquy, as required under Crim.R. 11(C)(2)(c). *See State v. Miller*, 2020-Ohio-1420, ¶ 14, quoting *Veney* at ¶ 29 ("[T]he trial court must orally inform the defendant of the rights set forth in Crim.R. 11(C)(2)(c) during the plea colloquy for the plea to be valid."); *State v. Ballard*, 66 Ohio St.2d 473 (1981).

{¶ 18} When a trial court omits an advisement dealing with one of the five constitutional rights under Crim.R. 11(C)(2)(c), the plea is invalid as a matter of law, without any requirement of demonstrating prejudice to the defendant. *State v. Green*, 2024-Ohio-2174, ¶ 4 (8th Dist.), citing *Veney* at ¶ 30; *Dangler* at ¶ 17. "The sole remedy is to vacate the guilty plea as invalid and remand for further proceedings regardless of the individual circumstances of the case." *Green* at *id.*

{¶ 19} Because the trial court did not advise Price of his constitutional right that he cannot be compelled to testify against himself, the guilty plea is invalid. Therefore, Price's convictions in CR-23-679324-A are vacated, the original indictment is reinstated, and the matter is remanded for further proceedings.

{¶ 20} The first assignment of error is sustained.

{¶ 21} In the second assignment of error, Price argues that the guilty verdicts in CR-21-660472-A were inconsistent with his codefendant's acquittals on the same charges.

{¶ 22} The trial court convicted Price of aggravated robbery and felonious assault as to victim Garrity and acquitted him of robbery as to victim Sachs. The trial court acquitted Price's codefendant, Shelton, of aggravated robbery and felonious assault as to victim Garrity but convicted her of the robbery charge as to victim Sachs. This, according to Price, was impermissible because the facts of the case were the same for both defendants.

{¶ 23} In *Harris v. Rivera*, 454 U.S. 339, 345-346 (1981), the Supreme Court considered the question of inconsistent verdicts rendered by a trial judge in State Court. The Court noted that it had previously held that inconsistent verdicts between codefendants in a jury trial were not sufficient to set aside a verdict. *Id.* citing *United States* v. *Dotterweich*, 320 U.S. 277, 279 (1943). The Court acknowledged the general rule that "inconsistency in a verdict is not a sufficient reason for setting it aside" and rejected the contention that "a different rule should be applied to cases in which a judge is the finder of fact." *Harris* at 345; *see also*

*United States v. Chilingirian*, 280 F.3d 704, 711 (6th Cir. 2002) (finding that "inconsistent verdicts rendered by a trial judge provide no greater grounds for reversal than inconsistent verdicts rendered by a jury"); *State v. Hill*, 2014-Ohio-387, ¶ 33 (8th Dist.) (holding that "inconsistent verdicts between codefendants is not a sufficient reason for reversing a conviction").

{¶ 24} Price cites *State v. Huntley*, 30 Ohio App.3d 29 (1st Dist. 1986), to support his claim that the verdicts in this case were inconsistent and that inconsistency warrants a reversal. In *Huntley*, the defendant and his codefendant were tried together in a one-count indictment charging aggravated burglary. The jury found defendant guilty of burglary. The same jury concluded that codefendant was guilty of breaking and entering. In arriving at its verdict, the jury found the apartment at issue to be an occupied structure as to Huntley, while it found the same premises to be an unoccupied structure as to the codefendant. This, the court found, led to an inconsistent verdict. The court modified Huntley's conviction to breaking and entering.

{¶ 25} We are not persuaded by the *Huntley* Court's analysis. In this case, Price's actions were not the same as his codefendant's actions; even Price concedes that the "distinction in this case from *Huntley* is that each defendant engaged in separate conduct for their part in the aggravated robbery." The evidence showed that Price took Garrity's phone and assaulted him. As a result of the assault, Garrity sustained multiple lacerations to his face, a broken cheekbone, and an injury to his shoulders that required surgery. Although the court found beyond a reasonable

doubt that Shelton robbed Sachs of Garrity's phone, the court did not find beyond a reasonable doubt that Shelton took part in committing aggravated robbery or felonious assault against Garrity. Likewise, although the trial court found beyond a reasonable doubt that Price committed the initial robbery of the phone from Garrity and, in doing so, caused him serious physical harm, the court did not find beyond a reasonable doubt that he participated in the robbery of the cellphone from Sachs. Based on these facts, the verdicts were not inconsistent and, even if the verdicts were inconsistent, the inconsistency would not warrant a reversal. *See Hill* at *id.*

{¶ 26} Accordingly, the second assignment of error is overruled.

{¶ 27} Judgment affirmed in part and reversed in part. Price's convictions in Case No. CR-23-679324 are hereby vacated and the case is remanded for proceedings consistent with this opinion. Price's convictions in Case No. CR-21-660472-A are affirmed.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, JUDGE

LISA B. FORBES, P.J., and
FRANK DANIEL CELEBREZZE, III, J., CONCUR